Approved: _____
Jun Xiang
Assistant United States Attorney

Before: HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

JEREMY ORTIZ-MOLINA,
DEREK ORTIZ SOCIAS, and
PEDRO ROSARIO CARRASQUILLO,

Defendants.

- - - - - - - - - - - - - - - - - - x

**21 MAG 2260**

**COMPLAINT**

Violation of
21 U.S.C. § 846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

Christian Garcia, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. In or about February 2021, in the Southern District of New York and elsewhere, JEREMY ORTIZ-MOLINA, DEREK ORTIZ SOCIAS, and PEDRO ROSARIO CARRASQUILLO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that JEREMY ORTIZ-MOLINA, DEREK ORTIZ SOCIAS, and PEDRO ROSARIO CARRASQUILLO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that JEREMY ORTIZ-MOLINA, DEREK ORTIZ SOCIAS, and PEDRO ROSARIO CARRASQUILLO, the

defendants, conspired to distribute and possess with intent to distribute was 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, my review of documents and other evidence, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

a. In or about February 2021, a confidential source working at the direction of law enforcement ("CS-1")[1] began communicating with the user of a phone number ending in –6977 (the "-6977 Number"), who, as described below, was later identified to be JEREMY ORTIZ-MOLINA, the defendant. During these calls, which were recorded, ORTIZ-MOLINA told CS-1, in substance and in part, that ORTIZ-MOLINA was based in Florida and offered to sell CS-1 kilogram quantities of methamphetamine as well as heroin.[2]

---

[1]  CS-1 has been providing information to the DEA since in or about 2006. CS-1 was previously arrested for a narcotics offense, but the case was subsequently dismissed. CS-1 is providing information to law enforcement in exchange for financial benefits. Information provided by CS-1 has been found reliable and corroborated by, among other things, phone records and electronic evidence, and has led to multiple seizures of narcotics.

[2]  Certain conversations and calls described in this Complaint occurred in Spanish. I am a fluent Spanish speaker and the

b.  On or about February 24, 2021, on a recorded phone call, ORTIZ-MOLINA agreed, in substance and in part, to sell CS-1 approximately eight kilograms of methamphetamine for approximately $8,500 per kilogram.

c.  On or about the same day, on a recorded phone call, ORTIZ-MOLINA told CS-1, in substance and in part, that individuals who worked with ORTIZ-MOLINA would drive the methamphetamine to Manhattan and that they would arrive on or about February 25, 2021.

d.  On or about February 25, 2021, at approximately 1:50 p.m., CS-1 received a call from the user of a phone number ending in -7925 (the "-7925 Number"), who, as described below, was later identified to be PEDRO ROSARIO CARRASQUILLO, the defendant. During this call, which was recorded, ROSARIO CARRASQUILLO told CS-1, in substance and in part, that he was in en route to New York City. In additional calls from the -7925 Number the same day, which were recorded, ROSARIO CARRASQUILLO updated CS-1 periodically about the progress of the trip and told CS-1 that he would be in a silver Ford F250 pickup truck with a Florida license plate. ROSARIO CARRASQUILLO and CS-1 arranged to meet at a location in Manhattan ("Address-1"). In anticipation of the meeting, law enforcement set up physical surveillance near Address-1.

e.  On or about the same day, at approximately 7:05 p.m., a silver Ford F250 pickup truck with a Florida license plate (the "Truck") towing a trailer (the "Trailer") approached Address-1, where CS-1 was waiting inside a vehicle (the "CS Vehicle"). Inside the Truck were two individuals: ROSARIO CARRASQUILLO, who was seated in the front passenger seat, as well as DEREK ORTIZ SOCIAS, the defendant, who was the driver. CS-1 was wearing audio-recording equipment, which inadvertently was not activated. ROSARIO CARRASQUILLO exited the Truck and had an initial conversation with CS-1 alone, and then ROSARIO CARRASQUILLO, ORTIZ SOCIAS, and CS-1 engaged in conversation together. During the three-person conversation, ROSARIO CARRASQUILLO told CS-1, in substance and in part, that they needed to relocate to a more private location to open the trap, which was

---

descriptions of the substance of the Spanish-language conversations are provided here in draft form only.

inside the Trailer and difficult to open.[3]  In response, ORTIZ SOCIAS told ROSARIO CARRASQUILLO, in substance and in part, not to reveal where the trap was located and ROSARIO CARRASQUILLO responded that CS-1 was going to find out anyway.  At the direction of law enforcement, CS-1 agreed to relocate the meeting and asked ORTIZ SOCIAS and ROSARIO CARRASQUILLO to follow the CS Vehicle in the Truck.

    f.   As the Truck and CS Vehicle left Address-1 and were on the road, law enforcement agents conducted a traffic stop of the Truck and the Trailer.  Both ORTIZ SOCIAS and ROSARIO CARRASQUILLO identified themselves.  When asked by agents why he was in New York, ORTIZ SOCIAS stated, in substance and in part, that he was in New York to sell motorcycles for his father.  Law enforcement asked for consent to search the Truck and the Trailer, and ORTIZ SOCIAS gave verbal consent and provided keys to the Truck and the Trailer.  Thereafter, a law enforcement officer ("Officer-1"), who is a certified handler of narcotics-detection canines, exposed a narcotics-detection canine named "Balu"[4] to the exterior and then the interior of the Truck and the Trailer.  Inside the Trailer, Balu gave a detection alert near the front panel.  Officer-1 explained that the alerts given by Balu were consistent with positive indications for narcotics odors.

---

[3]   Based on my training and experience, a trap is a hidden compartment inside of a motor vehicle, which is designed to store contraband.

[4]   Based on conversations with other law enforcement officers, I have learned that Balu is a German shepherd who was originally certified as a narcotics-detection canine after completing certification in or about June 2018, and was recertified by the Port Authority Police K9 Academy in or about 2019 and 2020.  Balu was certified to detect the odors of marijuana, cocaine, heroin, MDMA, and methamphetamine.  During Balu's training and in order to become certified and recertified, Balu was exposed to numerous different objects, some of which contained narcotics, and others of which did not.  Balu has been trained to differentiate between those categories of objects, and to give his enforcement handlers a positive indication (i.e., to "alert") if he detects narcotics odors.  Since his certification, Balu has received numerous additional hours of training, and has been used regularly in the field to detect narcotics odors from automobiles, residences, packages, suitcases, and other items.  Balu has generally proven reliable in the field.

4

    g. Law enforcement officers then placed ORTIZ SOCIAS and ROSARIO CARRASQUILLO under arrest.

    h. Following his arrest, ORTIZ SOCIAS was advised of and waived his Miranda rights in writing.  ORTIZ SOCIAS also provided written consent for law enforcement to search the Truck and the Trailer.  Thereafter, law enforcement removed the front panel of the interior of the Trailer and found eight bricks of a substance wrapped in plastic (the "Bricks").  The Bricks weighed approximately eight kilograms in total, and a sample from one of the Bricks field-tested positive for methamphetamine.  A photograph of the Bricks is reproduced below.



    i. Following the waiver of his Miranda rights, ORTIZ SOCIAS stated, in substance and in part, that the purpose of his trip to New York was to sell two motorcycles for his father.  ORTIZ SOCIAS consented to a search of his cellphone (the "ORTIZ SOCIAS Phone").  Upon searching the ORTIZ SOCIAS Phone, law

enforcement found photographs, reproduced below, of substances that appeared to be methamphetamine.

 

j. During his post-Miranda interview, ORTIZ SOCIAS stated that his father's name was "Jeremy Ortiz" and provided a date of birth for his father. Based on review of law enforcement databases, law enforcement determined that ORTIZ SOCIAS's father was ORTIZ-MOLINA.

k. On the same day, between approximately 7:25 pm and 7:40 p.m., CS-1 spoke with ORTIZ-MOLINA on recorded phone calls at the -6977 Number. During these calls, which were recorded, ORTIZ-MOLINA told CS-1, in substance and in part, that ORTIZ-MOLINA was concerned about the whereabouts of his son, whom he believed had been arrested. In the course of these communications, ORTIZ-MOLINA also offered to get CS-1 "dope." Based on my training and experience, I know that the term "dope" is a common slang term for heroin.

l. On or about February 26, 2021, at approximately 11:30 a.m., ORTIZ-MOLINA was arrested in New York. Based on my review of travel records, I have learned that ORTIZ-MOLINA arrived in New York on a flight from Florida earlier that morning. At the time of arrest, a cellphone was recovered from ORTIZ-MOLINA and, when I subsequently dialed the -6977 Number, that cellphone rang.

WHEREFORE, I respectfully request that JEREMY ORTIZ-MOLINA, DEREK ORTIZ SOCIAS, and PEDRO ROSARIO CARRASQUILLO, the defendants, be imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
CHRISTIAN GARCIA
Special Agent
Drug Enforcement Administration

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
26th day of February, 2021

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK